UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MANNY CHUM

    VS                                                                                                         18-cv-684

GNMA II
PACIFIC UNION  FINANCIALASSOCIATION, LLC

## RESPONSE TO  REQUEST FOR STATUS REPORT

The Plaintiff responds to the Request for Status Report as follows:

The Plaintiff received the Trial Modification, which was attached to the Request for a Status Report. This Trial Modification increased the payment by the Plaintiff from $1162.14 to $185.96. As a result, Plaintiff's attorney was able to determine from the loan modification offer and the proposed payment that the Plaintiff had not been considered for all FHA home retention options.  The trial modification offer indicates that contrary to Regulations of the Department of Housing and Urban Development that the Plaintiff was not reviewed for a Partial Claim and a modification with partial claim.   These HUD Regulations (Mortgagee Letter 2016- 4), reviewed by the Plaintiff's attorney are attached to this Response.  There also was no Notice of the Right to Appeal this Loss Mitigation Decision. Thus Plaintiff  sent Requests for Information concerning the calculations regarding the loss mitigation options to determine the charges to the

1

mortgage loan account. For example, despite the fact that this matter has not been extensively litigated, there are $7360.78 of disputed legal fees charged to the mortgage loan account, as indicated by the February 18, 2020 statement, the last statement sent to the Plaintiff's attorney. ("Exhibit 1"). The disputed legal fees and costs as of January 11, 2019 were $2484.99. Thus there has been an increase in disputed legal fees of $4875.79 since the payoff statement of January 11, 2019. ('Exhibit 2") Thus the Plaintiff sought to obtain the breakdown of the calculation of these charges, since the loan servicer cannot charge legal fees for processing a loan modification.

    The Defendant insisted at the status conference that all loan modification documents should be directed to its attorney to avoid confusion. The Plaintiff's attorney at that conference indicated that to have all loss mitigation options considered that they had to be mailed to the Defendant's designated address to qualify under the Real Estate Settlement and Procedures Act as a Request for Information. The designated address for Nationstar is indicated on its statements as PO Box 619098, Dallas, TX 75261-0741. The caselaw is quite clear that a homeowner will not have the protection of RESPA if it mails any Requests for Information to any address other than the designated address. The notice provisions indicate that Wells Fargo has designated a specific address for service of Regulation X Notices

of Error and Requests for Information.  Thus a reading of these regulations indicates that unless Wells Fargo designates your office as a designated recipient of such notices, that any service of Regulation X Requests for Information or Notices of Error, which were transmitted to you would not be considered Notices of Error or Requests for Information.

The Court in *Peters v Bank of America* on March 18, 2015 held:

Failure to send the [alleged] QWR to the designated address for the receipt and handling of QWRs does not trigger the servicer's duties under RESPA." *Berneike,* 708 F.3d at 1149 (internal quotation marks omitted). When an alleged QWR fails to meet the requirements of RESPA and its implementing regulation, it "amounts to nothing more than general correspondence between a borrower and servicer." *Id*[3] Because Peters did not use the address that SLS designated for QWRs, his letter does not trigger liability under RESPA for SLS. Instead, his letter constitutes "general correspondence between a borrower and a servicer." *Berneike,* 708 F.3d at 1149.Good business principles may motivate SLS and similar loan servicers to respond to their customers' fee disputes or information requests, but RESPA's obligations do not apply to servicers unless a borrower follows the statutorily prescribed path for a QWR. An important step on that path is the use of the servicer's properly designated address for QWRs. Because SLS properly designated such an address in its Notice of Transfer and Peters failed to use it, the Court GRANTS SLS's motion for summary judgment.

The Second Circuit in *Roth v. Citimortgage*, 756 F.3d 178(2d Cir, 2014) made a similar holding:

CitiMortgage's duties under RESPA are triggered if it receives a qualified written request ("QWR"), defined as correspondence that identifies a borrower's account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). Roth alleges that the three letters

sent by her lawyer in April and June 2011 are QWRs, and that CitiMortgage is liable for failing to provide the requested information (in violation of § 2605(e)(2)) and for providing information about overdue payments to credit agencies during the sixty-day period following receipt of the letters (in violation of § 2605(e)(3)). We conclude that the district court properly dismissed these claims on the basis that her lawyer's letters were not sent to CitiMortgage's designated QWR address, and the requests are thus not QWRs under RESPA.

Thus since the Regulation and case law makes it clear that failure to send any correspondence designated as Notices of Error or Requests for Information to any address will render such communications as general correspondence, not subject to the provisions of RESPA.  Since this designated address is not a law office, then any Requests for Information or Notices of Error must be sent to the designated address of Nationstar for them to be effective. Plaintiff however did mail copies of the Rewquests for Information and will send any other correspondence to Defendant's attorney.

The Plaintiff believes that a mistake was made in her loss mitigation review, resulting in an incorrect calculation. To review the matter, she must send Requests for Information to determine whether the servicer followed the HUD Guidelines, which she can address in Requests for Information and Notices of Error, a right under Federal Law. She should not be precluded from transmitting such notices in order to protect her rights to be properly reviewed for a loan modification, which considers all home retention options

4

and which does not include inappropriate charges and inaccurate arrearage balances.

|  |  |
|---|---|
|  | MANNY CHUM<br>By her Attorney |
| March 10, 2020 | /s/ John B. Ennis<br>JOHN B. ENNIS, ESQ. #2135<br>1200 Reservoir Avenue<br>Cranston, Rhode Island 02920<br>(401) 943-9230<br>Jbelaw75@gmail.com |

Certificate of Service

I hereby certify that I emailed a copy of this Response to Crystal Cooke on March 10, 2020.

/s/ John B. Ennis