UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-------------------------------------------------------x

MANNY CHUM                                   :     CASE NO: 1:18-cv-00684-JJM-LDA
                                             :
     Plaintiff                              :
                                             :
                                             :
v.                                           :
                                             :
PACIFIC UNION FINANCIAL, LLC, ET AL. :
                                             :
     Defendants.                            :
-------------------------------------------------------x

## AFFIDAVIT OF AJ LOLL IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    I, _____, being sworn under oath, do hereby depose and state:

    *A. J. Loll, Vice President*
    *Nationstar Mortgage LLC*

1. My name is *Nationstar Mortgage LLC.* I am over eighteen (18) years of age and I am a resident of the State of Texas.
   *A. J. Loll, Vice President*

2. I am employed as *Nationstar Mortgage LLC* by Nationstar Mortgage LLC d/b/a Mr. Cooper and I have held this position since *2002*.
   *A. J. Loll, Vice President*

3. In performing my duties and responsibilities as a *Nationstar Mortgage LLC*, I regularly review business records, both in paper and electronic form, regarding mortgage loans that Nationstar Mortgage LLC d/b/a Mr. Cooper owns and/or services. In the mortgage servicing industry, such records are created and maintained in good faith and in the regular course of business, and it is the usual course of business for entries to be made at the time of the event recorded, or within a reasonable time thereafter.
   *A. J. Loll, Vice President*
   *Nationstar Mortgage LLC*

4. Nationstar Mortgage LLC d/b/a Mr. Cooper is the servicer of the loan that is the subject of the Complaint. As servicer, Nationstar Mortgage LLC d/b/a Mr. Cooper is

responsible for collecting payments, engaging in communications regarding the loan, engaging in loss mitigation reviews, and managing the foreclosure process on behalf of the Noteholder.

5. In preparation for this affidavit, I have reviewed the business records concerning the mortgage loan account for Manny Chum (hereinafter, the "Plaintiff") and Sochanna Chum ("Borrowers") at 115 Second Avenue, Cranston, Rhode Island 02910 ("Property"). Based upon my review, the records establish that the statements made in the following paragraphs are true and accurate.

6. On or about April 23, 2015 the plaintiff Manny Chum (hereinafter, the "Plaintiff") and Sochanna Chum executed and delivered a Note in the original principal amount of $139,428.00 to Shamrock Financial Corporation (the "Note"). A true and accurate copy of the Note is attached hereto as **Exhibit 1**.

7. Simultaneously therewith, to secure payment of the Note, Borrowers executed a Mortgage Deed their interest in certain real property known as 115 Second Avenue, Cranston, Rhode Island 02910 to Mortgage Electronic Registration Systems, Inc., as nominee for Shamrock Financial Corporation, its successors and assigns (the "Mortgage"). The Mortgage was recorded on April 24, 2015 in Volume LR5047 at Page 340 of the Cranston Land Records. A true and accurate copy of the Mortgage as recorded is attached hereto as **Exhibit 2**.

8. The Mortgage identified Shamrock Financial Corporation as the Lender, but named MERS "and the successors and assigns of MERS" as the mortgagee and nominee for Shamrock Financial Corporation and its successors and assigns. See **Exhibit 2** (Mortgage) at "Definitions" Paragraphs (C) and (D).

2

9. Thereafter, Mortgage Electronic Registration Systems, Inc. as nominee for Shamrock Financial Corporation, its successors and assigns assigned the Mortgage to the Defendant by Assignment of Mortgage dated September 27, 2016 and recorded October 13, 2016 in Volume LR5309 at Page 313 of the Cranston Land Records (hereinafter, the "Assignment").   A true and accurate copy of the Assignment as recorded is attached hereto as **Exhibit 3**.

10. The Defendant is currently the holder of the Note and the mortgagee of record and was the holder of the Note and the mortgagee of record at the commencement of the action.

11. The Plaintiff and Sochanna Chum have failed to make monthly mortgage payments as required by the loan documents.

12. The Plaintiff and Sochanna Chum are in default under the loan documents for failure to make payments as required by the terms of the Note and Mortgage.

13. On or about August 28, 2017, before three (3) payments were past due, the Plaintiff and Sochanna Chum were duly notified in writing by the Defendant that a face-to-face meeting was requested in order to discuss potential loss mitigation options available to mortgagors. See, **Exhibit 4.**

14. On or about August 29, 2017, in accordance with the requirements of 24 C.F.R. 604, the Defendant sent a representative to the Property. See, **Exhibit 5**.

15. Thereafter, the Defendant contacted William Martinelli at Rhode Island Housing and, after the Plaintiff and Sochanna Chum failed to respond to Mr. Martinelli's attempts to organize a mediation conference with them, obtained a certificate of compliance attesting to the fact that the Plaintiff and Sochanna Chum so failed to respond.  See. **Exhibit 6.**

16. On or about August 23, 2018, the Defendant provided, in accordance with the terms of the Note and the Mortgage and R.I.G.L. 34-27-3.1, the Plaintiff and Sochanna Chum with a written notice of the Defendant's intent to foreclose on the Mortgage. <u>See</u>, **Exhibit 7**.

17. Effective February 1, 2019, Plaintiff Pacific Union Financial, LLC ("Pacific") merged into Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper"). Mr. Cooper is the corporate successor in interest to Pacific as to all matters that are the subject of this action.

18. Based on a review of the payment histories, Pacific Union charged late fees which equaled 4 percent of the overdue payment of principal, interest, and escrow amounts. Pacific Union reversed late fees in the amount of $573.28 on or about March 30, 2018 with the notes "waive L/C IAO $573.28 to correct L/C assessed on PITI vs. PI" and "misapplication reversal" prior to the commencement of this action and prior to the notice of foreclosure.

[REMANDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

19. I have reviewed all of the exhibits referenced above and attached hereto. The exhibits are true and accurate copies of records maintained by Nationstar Mortgage LLC d/b/a Mr. Cooper regarding the mortgage loan at issue.

Signed under the pains and penalties of perjury this _5 Tuesday_ of January _5th_, 2021.

**Nationstar Mortgage LLC d/b/a Mr. Cooper**

Signature: _____(Seal)

Name: _____
A. J. Loll, Vice President
Nationstar Mortgage LLC

Title: _____

STATE OF          Texas                    )
                                                                    ss:
COUNTY OF      Dallas                  )

On this _5th_ day of _January_____, 2021, before me, the undersigned officer, personally appeared _A. J. Loll_____, who acknowledged himself/herself to be the _Vice President_____ of Nationstar Mortgage LLC d/b/a Mr. Cooper, a Delaware limited liability company and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained and acknowledged the same to be his/her free act and deed individually and as such officer, and as the free act and deed of the corporation.



KIM G CAVAGNARO
Notary ID #2954565
My Commission Expires
February 28, 2021

5

# EXHIBIT 1

*Chum*

# NOTE

LOAN# ███████

FHA Case Number
████████

MIN# ████████████

April 23rd, 2015          CRANSTON                 ,  RHODE ISLAND
[Date]                        [City]                         [State]

115 SECOND AVENUE    CRANSTON , RI 02910

[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 139,428.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   SHAMROCK FINANCIAL CORPORATION , A RHODE ISLAND CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      3.875          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st         day of each month beginning on    June 1st
2015       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items  in the order described in the Security Instrument before Principal. If, on    May 1st, 2045                            ,  I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  75 NEWMAN AVE, EAST PROVIDENCE, RI 02916
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   655.64

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use  my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the  reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   4.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
SOCHANNA CHUM                              -Borrower

_____ (Seal)
MANNY CHUM                                 -Borrower

**Pay to the Order of**

Without Recourse
Pacific Union Financial, LLC              _____ (Seal)
                                                                                     -Borrower

Andy Peach, Executive Vice President      _____ (Seal)
                                                                                     -Borrower

[Sign Original Only]

NMLSR ID:No.: ███████████
NMLSR (L.O.) ID ███████████
Mortgage Loan Originator:  SHAMROCK FINANCIAL CORPORATION

GCC-3213new-3 (11/14)                     Page 3 of 3                    *Effective 1/21/2015*
                                                              FHA Multistate Fixed Rate Note

Loan Number: ███████████

MIN: ███████████

# ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

Note Date: **04/23/2015**

Original Loan Amount: **$139,428.00**

Interest Rate: **3.875**

Maturity Date: **05/01/2045**

Borrower(s) Name(s): **SOCHANNA CHUM,MANNY CHUM** ,

Property Address: **115 SECOND AVENUE CRANSTON , RI 02910**

Pay to the order of: **PACIFIC UNION FINANCIAL LLC**

**Without Recourse**

**SHAMROCK FINANCIAL CORPORATION, A RHODE ISLAND CORPORATION**

_signature_

Signature of Duly Authorized Officer

Rod Correia

Typed Name of Signatory

Title of Signatory: **PRESIDENT**

# EXHIBIT 2

Recordation Requested by:
SHAMROCK FINANCIAL CORPORATION
75 NEWMAN AVE
EAST PROVIDENCE, RI 02916

When Recorded Mail to:
SHAMROCK FINANCIAL CORPORATION
75 NEWMAN AVENUE
EAST PROVIDENCE, RI 02916

Send Tax Notices to:
SHAMROCK FINANCIAL CORPORATION
75 NEWMAN AVENUE
EAST PROVIDENCE , RI 02916



[Space Above This Line For Recording Data]

LOAN #
State of
MIN #

FHA Case Number

# MORTGAGE

(Mortgage to Secure Present and Future Loans Under Chapter 25 of Title 34 of the General Laws)

PARCEL TAX ID#:

THIS MORTGAGE ("Security Instrument") is given on  April 23rd, 2015                     . The Mortgagor is
SOCHANNA CHUM AND MANNY CHUM

whose address is   91 LOOKOUT AVENUE , CRANSTON, RI 02920

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a
separate corporation acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. BOX 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.
SHAMROCK FINANCIAL CORPORATION

which is organized and existing under the laws of    THE STATE OF RHODE ISLAND                         , and whose
address is   75 NEWMAN AVE, EAST PROVIDENCE, RI 02916

("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED THIRTY NINE THOUSAND FOUR HUNDRED TWENTY EIGHT AND NO/100
                                                          Dollars (U.S. $ 139,428.00                   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on  May 1st, 2045                 . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the MERS (solely as nominee
for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon
the Statutory Condition and with the Statutory Power of Sale, the following  described  property located  in
PROVIDENCE                                           County, Rhode Island:
See Attached Exhibit A

which has the address of  115 SECOND AVENUE  , CRANSTON                                         [Street, City],
Rhode Island       02910                ("Property Address");
                   [Zip Code]

RHODE ISLAND - Single Family - FHA SECURITY INSTRUMENT - 1/96
GCC - m1590-1RI (11/10)
Page 1 of 6






TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before

to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the

GCC -m1590-2RI (11/12)                              Page 2 of 6

S-C
MC

monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:



(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 21 Days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 21 Days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.   Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.   Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.   Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.   Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.   Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.   Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.  **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18.  **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19.  **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

20.  **No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this EPM.

21.  **Homestead Estate.** If Borrower heretofore has acquird or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this EPM or the Note, and that said homestead estate is subject to all of the rights of Lender under this EPM and the Note and all renewals, extensions and modifications of this EPM and the Note, and is subordinate to the lien evidenced by this EPM, and all renewals, extensions and modifications of this EPM. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

GCC - 1590-5RI (07/10)                                                    Page 5 of 6

S-C
ll C

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider             ☐ Growing Equity Rider
☐ Graduated Payment Rider       ☐ Planned Unit Development Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____   _SOCHANNA CHUM_____ (Seal)
                                    SOCHANNA CHUM                    -Borrower

_____   _____ (Seal)
                                    MANNY CHUM                       -Borrower

_____ (Seal)    _____ (Seal)
                   -Borrower                                         -Borrower

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF  RHODE ISLAND                    )        Prepared By:
                                          ) SS     ASHLEY COOKSON
COUNTY OF _____                         )        SHAMROCK FINANCIAL CORPORATION
                                                   75 NEWMAN AVE
                                                   EAST PROVIDENCE, RI 02916

On this 23rd           day of April              ., 2015      , before me, the undersigned Notary Public,
personally appeared  SOCHANNA CHUM AND MANNY CHUM

to me known and known by me or proved through satisfactory evidence, which was ___RIDL___ to be
the individual(s) described in and who executed the foregoing Mortgage, and he/she/they acknowledged said Mortgage, by
him/her/them executed, to be his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this  23rd                    day of April              , 2015

By _____            Residing at _____

Notary Public in and for the State of               My commission expires _____

                                                    THEODORE A. TOPOUZIS
                                                    NOTARY PUBLIC - RHODE ISLAND
                                                    My Commission Expires
                                                    July 31, 2015

NMLSR ID:  2227
NMLSR (L.O.) ID:  19068 (KAREN BALLOU)
Loan Originator:  SHAMROCK FINANCIAL CORPORATION

GCC - 1590-6RI (12/13)                    Page 6 of 6

S-C
MC

# EXHIBIT 3

**RHODE ISLAND**
CITY/TOWN OF CRANSTON
LOAN NO.: 0000898270

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   ‖‖‖‖‖

PREPARED BY: SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
SECURITY CONNECTIONS, INC.
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401
PH. (208)528-9895

2016101301209I0 Bk:LR5309 Pg:313
RECORDED Cranston,RI 1/1
10/13/2016 11:27:53 AM ASGT MTG

# ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS, located at P.O. BOX 2026, FLINT, MICHIGAN 48501-2026, Assignor, does hereby grant, assign, transfer, and set over unto PACIFIC UNION FINANCIAL, LLC, located at 1603 LBJ FREEWAY, SUITE 500, FARMERS BRANCH, TX 75234, Assignee, its successors and assigns, all of Assignor's right and interest in and to that certain Mortgage dated APRIL 23, 2015 executed by SOCHANNA CHUM AND MANNY CHUM, Mortgagor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SHAMROCK FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS, Original Mortgagee, recorded on APRIL 24, 2015 in Volume LR5047 at Page 340 as Instrument No. 20150420041700 in the Mortgage Records in the Office of the Clerk of the City/Town of CRANSTON, State of RHODE ISLAND.
Property Address: 115 SECOND AVENUE, CRANSTON, RI 02910

TOGETHER with all rights accrued or to accrue to said Mortgage.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this SEPTEMBER 27, 2016.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

REBECCA HIGLEY, VICE PRESIDENT

STATE OF IDAHO          COUNTY OF BONNEVILLE   ) ss.

On SEPTEMBER 27, 2016, before me MELANIE MENDOZA, personally appeared REBECCA HIGLEY known to me to be the VICE PRESIDENT of the corporation that executed the instrument of the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

MELANIE MENDOZA (COMMISSION EXP. 07/21/2022)
NOTARY PUBLIC

MELANIE MENDOZA
NOTARY PUBLIC
STATE OF IDAHO

PF80101141M - FAM - RI                    Page 1 of 1                    MIN: ~~100204700000002701~~
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖                                            MERS PHONE: 1-888-679-6377

# EXHIBIT 4

Pacific Union Financial LLC
PO Box 9093
Temecula, CA 92589-9093



9314 7100 1170 0926 6505 76

**RETURN RECEIPT REQUESTED**

20170831-255

SOCHANNA CHUM
MANNY CHUM
115 2ND AVE
CRANSTON, RI 02910



CRR_INT



**PacificUnionFinancial** LLC

YOUR INTERESTS ARE COVERED

8/28/2017

SOCHANNA CHUM
MANNY CHUM
115 2ND AVE
CRANSTON, RI 02910

RE: Loan Number █████████

Dear SOCHANNA CHUM and MANNY CHUM,

We are contacting you because we are concerned you may be having difficulty making your monthly mortgage payment. We know you may already be engaged in discussions with Pacific Union regarding possible loss mitigation for your loan, but we want you to be aware of all the options available. We would like to schedule a face to face meeting to discuss the options that are available and also determine your eligibility for each. Possible options include:

- Refinance your loan with us or another lender;
- Modify your loan terms with us;
- Payment forbearance temporarily gives you more time to pay your monthly payment;
- If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. As an alternative to foreclosure, you may be able to sell your home and use the proceeds to pay off your current loan.

Please call us at 1-855-573-2289 where you can speak to anyone on our dedicated team of home retention specialists to schedule an interview. The longer you wait, or the further you fall behind on your payments, the harder it will be to find a solution. We look forward to working with you to find the solution that will work best for you.

Pacific Union Financial, LLC
1603 LBJ Freeway, Suite 500
Farmers Branch, TX 75234
1-866-427-4783

For more information, visit www.PacificUnionFinancial.com or email lossmitigation@loanpacific.com.

Pacific Union Financial is required by the Fair Debt Collections Practices Act to inform you that if your loan is currently delinquent or in default, as your loan servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you have received a bankruptcy discharge, and the loan was not reaffirmed in the bankruptcy case, Pacific Union will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.



| Servicemembers Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Exp 12/31/2017 |
| --- | --- | --- |

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Pacific Union Financial, LLC 1603 LBJ Freeway Suite 500 Farmers Branch, TX 75234 1-866-427-4783.
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?



- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.



# EXHIBIT 5

**United States District Court**
**District of Rhode Island**

|  |  |  |
|---|---|---|
| Manny Chum | ) | |
| Plaintiff | ) | |
| v. | ) | Case No.: 18-cv-684 |
| GNMA II;<br>Pacific Union Financial<br>Association LLC | ) | |
| Defendants | ) | |

**Affidavit of Ryan Kojadulian of JM Adjustment Services**

I, Ryan Kojadulian, of JM Adjustment Services, having personal knowledge of the facts contained in this affidavit, on oath, state as follows:

1. I am employed by or serve in the capacity of Compliance Manager at JM Adjustment Services.

2. In my capacity as Compliance Manager, I along with others have knowledge of the business records of JM Adjustment Services as they relate to the Mortgage which is the subject of the above captioned case. JM Adjustment Services' records are kept in the ordinary course of business by persons who have a business duty to make such records. The records are made at or near the occurrence of events so recorded. To the extent records related to the loan come from another entity, those records were received by JM Adjustment Services in the ordinary course of its business, have been incorporated into and maintained as part of JM Adjustment Services' business records, and have been relied on by JM Adjustment Services. I have personal knowledge of facts set forth in this affidavit based upon my review of JM Adjustment Services' business records maintained in connection with the Mortgage.

3. JM Adjustment Services performs field operational services for mortgage lenders and servicers, among them being the dispatch of individuals on behalf of mortgage services to mortgaged property for the purposes of

arranging face-to-face meetings with mortgagors pursuant to regulations promulgated by the Secretary of Housing and Urban Development.

4. JM Adjustment Services' business records reflect that at 5:51pm on August 29, 2017, Michael Pratt a representative from JM Adjustment Services visited property owned by the Plaintiff in this action commonly known as 115 Second Avenue in Cranston Rhode Island (the "Property") to see the Plaintiff in an attempt to arrange a face to face interview with the Plaintiff. JM Adjustment Services visited the property at the request of the holder of the subject Mortgage, Pacific Union Financial Association LLC to satisfy regulations promulgated by the Secretary of Housing and Urban Development relating to face to face interviews with delinquent borrowers.

5. Upon visiting the property, Michael Pratt met an individual who claimed to be the son of Ms. Chum. Michael Pratt provided to that individual an envelope containing documentation attached to this Affidavit as Exhibit A relating to the attempted face-to-face meeting.

**The Remainder of this Page is Left Intentionally Blank**

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this ___18th___ day
of ___December_____, 2018.

By: _____

_____
Title: Compliance Manager

STATE OF ___Michigan_____

COUNTY OF ___Macomb_____

    The foregoing instrument was acknowledged and sworn before me this
__18th__ day of ___December_____, 2018 by
___Ryan Kojadulian_____ as a Compliance Manager of JM
Adjustment Services, who is personally known to me or who has produced
_____ as identification.

_____
Signature of Notary Public
Name of Notary Public: ___Zachary Preuss_____

Personally known: ___Yes_____
OR Produced Identification_____
Type of Identification Produced_____

ZACHARY PREUSS<br>
Notary Public, State of Michigan<br>
County Of Oakland<br>
My Commission Expires 05-24-2024<br>
Acting in the County of ___Macomb___

AUGUST   28, 2017

SOCHANNA CHUM  & MANNY  CHUM
115 SECOND AVE
CRANSTON, RI 02910

**Account Number:**  0▮▮▮▮▮▮▮▮▮
**Property Address:**   115 SECOND AVE
                                    CRANSTON, RI 02910

Re: Foreclosure Prevention

Dear Customer(s):

Pacific Union, the mortgage servicer on the above referenced account, identified that you are in default under the terms of your note and mortgage or deed of trust. We realize that you may be experiencing a temporary or permanent financial difficulty that has led to the delinquency.

We want to work with you to resolve the delinquency and avoid foreclosure. We are willing to meet with you in person or by telephone.

Options available, which may be tailored to your individual circumstances, include:

- Repayment Plans
- Loan Modifications
- Short Sales
- Deeds in Lieu of Foreclosure

As a reminder, these options may not be available to everyone and you are still obligated to make all future loan payments as they come due, even while we are evaluating the types of assistance that may be available to you. Please be advised that there is no guarantee that you will be eligible to receive any (or a particular type of) assistance through one of these programs.

To discuss your situation and to obtain more information about the foreclosure prevention alternatives available to you, or to schedule a meeting, please contact our Loss Mitigation Department, toll free, at (855) 573-2289. Representatives are available Monday through Friday between the hours of 8:00 am - 6:00 pm.

If you do not feel comfortable talking with Pacific Union, you should immediately contact a HUD-approved housing counseling agency and arrange an appointment with a counselor. A counselor will help you assess your financial situation, determine what options are available to you, and can contact Pacific Union with you or on your behalf to discuss what course of action is best for you. To obtain the name and contact information for a counseling agency near you, call (800) 569-4287. You can also get an automated referral to the three housing counseling agencies located closest to you by calling (800) 569-4287.  HUD has information about loss mitigation assistance at its website at: http://www.hud.gov/offices/hsg/sfh/econ/econ.cfm.

We look forward to discussing loss mitigation options that may be available to you to avoid foreclosure.

Sincerely,

Pacific Union

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

F2F LM_02B 0815

## REQUEST FOR MORTGAGE ASSISTANCE FORM

**Important!** To avoid delays, please make sure all pages are complete and accurate.

Number of People in Household: _____   Loan Number _____

| **Section A** | **BORROWER and PROPERTY INFORMATION** |
|---|---|

Borrower's Name

Co-Borrowers Name

Social Security Number                           Date of Birth:

Social Security Number                           Date of Birth:

Home Phone Number With Area Code

Home Phone Number With Area Code

Email Address

Email Address

I wish to keep my home                      ☐ Yes   ☐ No

*When you give us your mobile phone number, we have your permission to contact you at that number about all of your Pacific Union Financial, LLC accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences.*

### NON-BORROWER HOUSEHOLD CONTRIBUTOR

Is there a person not on the mortgage note who lives in the residence and contributes financially to the household?                      ☐ Yes   ☐ No

If yes, complete the following:

First and last name(s):                           Contributor(s) Signature(s):

Monthly amount contributed to the household: $

Are there living expenses for this person?                      ☐ Yes   ☐ No

If yes, monthly amount of expenses: $

### MILITARY AFFILIATION

Is any borrower a service member?                      ☐ Yes   ☐ No

If yes, since 8/11/01 has the service member been, or is the Service member currently, serving on active duty with the United States Military?                      ☐ Yes   ☐ No

Has the service member recently been deployed away from the principal residence or recently received a Permanent Change of Station (PCS) order?                      ☐ Yes   ☐ No

If yes, I intend to occupy this property as my primary residence sometime in the future.   ☐ Yes   ☐ No

Is any borrower the surviving spouse of a deceased service member who was on active duty at the time of the death?                      ☐ Yes   ☐ No

### PROPERTY

The property is my:      ☐ Primary Residence   ☐ Second Home   ☐ Investment

The property is:      ☐ Owner Occupied   ☐ Renter Occupied   ☐ Vacant

Mailing Address:

Property Address (if same as mailing address, just write "same"):

| | |
|---|---|
| Is the property listed for sale?   ☐ Yes   ☐ No | Have you contacted a credit counseling agency for help? ☐ Yes   ☐ No |
| If yes, what was the listing date? _____ | If yes, please complete the following: |
| Have you received an offer on the property? ☐ Yes   ☐ No | |
| Date of Offer: _____ Amount of Offer: $ _____ | Counselor's Name: _____ |
| Closing date: _____ | Agency Name: _____ |
| Agents Name: _____ | Counselor's Phone Number: _____ |
| Agent's Phone Number: _____ | Counselor's Email: _____ |
| For Sale by Owner?      ☐ Yes   ☐ No | |

| Who pays the real estate tax bill on your property? | Who pays the insurance premiums for your property? |
|---|---|
| ☐ I do      ☐ Pacific Union does   ☐ Condo or HOA does | ☐ I do      ☐ Pacific Union does   ☐ Condo or HOA does |
| Are the taxes current?   ☐ Yes   ☐ No | Is the policy current?   ☐ Yes   ☐ No |
| Condominium or HOA Fees?   ☐ Yes   ☐ No | |
| Are the fees paid current?   ☐ Yes   ☐ No | Name(s) of Insurance Company: _____ |
| | |
| Name and address that Condo or HOA fees are paid to: | Insurance Company Phone Number(s): _____ |

**REQUEST FOR MORTGAGE ASSISTANCE FORM**

Important: To avoid delays, please make sure all pages are complete and accurate.

Loan Number: _____

| Section B | HARDSHIP AFFIDAVIT |
|---|---|

I, (We) am/are requesting a review.
I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

| ☐ My household income has been reduced. For example: reduced pay or hours, decline in business or self-employment earnings, death, disability or divorce of a borrower or co-borrower | ☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt. |
|---|---|
| ☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | ☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |
| ☐ I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago. | I believe that my situation is: <br> ☐ Short-term (under 6 months) <br> ☐ Medium-term ( 6 – 12 months) <br> ☐ Long-term or permanent (greater than 12 months) |

Explanation (continue on a separate sheet of paper if necessary): _____
_____

| Section C | REQUIRED DOCUMENTATION |
|---|---|

1.  Complete and provide these forms:
    - Request for Mortgage Assistance Form
    - Form 4506T
    - Last two years Tax Returns (All schedules and pages)
    - Hardship documentation

2.  Provide the documentation below based on your income type:

| IF ANY OF THE FOLLOWING APPLY TO YOU: | PROVIDE A COPY OF: |
|---|---|
| **Unemployment:** You are currently unemployed and receiving unemployment benefits | • A copy of your benefits (unemployment) statement or letter detailing the amount, frequency and duration of your unemployment benefits <br> • Two most recent bank statements |
| **Recently Employed:** You have recently become employed but have not yet received pay from your new employer | • Tax return from the previous year (including all schedules) <br> • Two most recent bank statements <br> • Offer letter from new employer detailing your hourly or annual pay, number of hours to be worked each week, and permanent or temporary position designation |
| **You are paid hourly or salary** | • Tax return from the previous year (including all schedules) <br> • Copies of your most recent pay stubs showing year-to-date earnings, if you are paid: <br> • Bi- Weekly or semi-monthly (2 consecutive pay stubs) <br> • Weekly (4 consecutive pay stubs) <br> • Monthly (1 paystub) <br> • A copy of your most recent W-2 |
| **You have experienced divorce or legal separation:** (separation of borrowers unrelated by marriage, civil union or similar domestic partnership under applicable law) | • Divorce decree signed by the court; or Separation agreement signed by the court; or recorded Quitclaim Deed evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property |
| **A death has occurred:** Death of a borrower or death of either the primary or secondary wage earner in the household or dependent family member | • Death certificate or Probate / Executor Documentation provided by court |
| **You receive fixed income such as:** <br> Social Security    Disability <br> Death Benefits    Pension <br> Public Assistance    Adoption Assistance | • Tax return from the previous year (including all schedules) <br> • Copy of benefit statement or letter from source indicating amount of income, frequency, and duration <br> • Two most recent bank statements |
| **You receive alimony or child support as income:** you are not required to disclose child support, alimony or separate maintenance, unless you choose to have it considered in our review of foreclosure alternatives | • Divorce Decree or Separation Agreement or other written agreement filed with the court indicating amount and duration of payments <br> • Two most recent bank statements showing deposits of this income |
| **You have income from rental property that is not your primary residence** | • Lease Agreement(s) <br> • Two most recent bank statements showing deposits of rent |
| **You're self-employed or you receive a 1099** | • Tax return from the previous year (including all schedules) <br> • Two most recent bank statements <br> • Most recent quarterly or year to date profit and loss statement compiled by |

| | a CPA<br>• 1099 letter from employer with start date and year to date gross income |
|---|---|

# INCOME/EXPENSE FOR HOUSEHOLD

## EMPLOYMENT INFORMATION

Borrower monthly Income:  $_____

I am:  ☐ Employed by a Company
         Company #1 Name: _____
         Company #1 Address: _____
         _____
         Employment Start Date: _____
         Company #2 Name: _____
         Company #2 Address: _____
         _____
         Employment Start Date: _____

I am: ☐Self-Employed     Percent of Ownership _____%

I am: ☐ Independent Contractor     Number of months paid_____

Co-borrower Monthly Income:  $_____

I am:  ☐ Employed by a Company
         Company #1 Name: _____
         Company #1 Address: _____
         _____
         Employment Start Date: _____
         Company #2 Name: _____
         Company #2 Address: _____
         _____
         Employment Start Date: _____

I am: ☐Self-Employed     Percent of Ownership _____%

I am: ☐ Independent Contractor     Number of months paid_____

| HOUSEHOLD INCOME | | HOUSEHOLD EXPENSES/DEBT | |
|---|---|---|---|
| Monthly Gross Wages | $ | Monthly First Mortgage Principal and Interest Payment | $ |
| Monthly Self-Employment Income | $ | Monthly Second Mortgage Principal and Interest Payment | $ |
| Monthly Overtime | $ | Monthly Homeowners' Insurance | $ |
| Monthly Unemployment Income | $ | Monthly Property Taxes | $ |
| Monthly Tips, Commissions, Bonus | $ | Monthly HOA/Condo Fees/Co-Op Fees/Property Maintenance | $ |
| Monthly Non-Taxable Social Security Income/SSDI | $ | Monthly Mortgage Payments on Other Properties | $ |
| Monthly Taxable Social Security Benefits or Other Monthly Income from Annuities or Retirement Plans | $ | Monthly Credit Cards/Installment Loan(s) (total minimum payment) | $ |
| Monthly Child Support/Alimony | $ | Monthly Auto Lease/Payment | $ |
| Monthly Gross Rents Received | $ | Monthly Other _____ | $ |
| Monthly Food Stamps/Welfare | $ | | |
| Monthly Other _____ | $ | | |

| HOUSEHOLD ASSETS | | ADDITIONAL LIVING EXPENSES | |
|---|---|---|---|
| Checking Account(s) | $ | Tuition/School | $ |
| Checking Account(s) | $ | Child Care (daycare, babysitting) | $ |
| Savings/Money Market | $ | Automobile Expenses (insurance/maintenance/gas) | $ |
| CDs | $ | Food | $ |
| Stocks/Bonds | $ | Life Insurance premium | $ |
| Other Cash on Hand | $ | Medical | $ |
| Other Real Estate (estimated value) | $ | Utilities | $ |
| Other | $ | Clothing | $ |
| **Total assets** | $ | Cable, Internet, Phone | $ |
| | | Other _____ | $ |
| | | **Total Living Expenses** | $ |

F2F RMA 0615

| Section E | | BANKRUPTCY |
|---|---|---|

Please provide attorney authorization and contact information if you are represented by an attorney.

Have you filed for bankruptcy: ☐ Yes   ☐ No   If yes:  ☐ Chapter 7  ☐ Chapter 13          Filing Date: _____

Has your bankruptcy been discharged? ☐ Yes  ☐ No          Bankruptcy case number: _____

| | ADDITIONAL LIENS/MORTGAGES OR JUDGMENTS |
|---|---|

☐ Check this box if this section does NOT apply to you.

| Lien Holder's Name/Servicer | Balance | Phone Number | Reference Number/Loan Number |
|---|---|---|---|
| | | | |
| | | | |

| Section G | | OTHER PROPERTIES OWNED |
|---|---|---|

### PROPERTY #1

Property Address:_____          Loan Number _____

Mortgage Servicer Name: _____   Mortgage Balance: $ _____

Second Mortgage Servicer Name: _____   Mortgage Balance: $ _____

Property is:  ☐ Vacant  ☐ Second or Seasonal Home  ☐ Rented

Current Value: $ _____   Gross Monthly Rent: $ _____   Monthly Mortgage Payment: $ _____

### PROPERTY #2

Property Address:_____          Loan Number _____

Mortgage Servicer Name: _____   Mortgage Balance: $ _____

Second Mortgage Servicer Name: _____   Mortgage Balance: $ _____

Property is:  ☐ Vacant  ☐ Second or Seasonal Home  ☐ Rented

Current Value: $ _____   Gross Monthly Rent: $ _____   Monthly Mortgage Payment: $ _____

### RENTAL PROPERTY CERTIFICATION
**You must complete this certification if you are requesting a mortgage modification with respect to a rental property.**

☐ Check this box if this section does NOT apply to you.

1. I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification.  I understand that the Servicer, the U.S. Department of the Treasury, or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such a five-year period.

   Note: The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms of written or electronic media, and/or engaging a real estate agent or other professional to assist in renting the property, at or below market rent.

2. The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification.  I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein.

   Note: The term "secondary residence" includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal or other basis.

3. I do not own more than five (5) single-family homes (i.e., one-to-four unit properties) (exclusive of my principal residence).

   **Notwithstanding the foregoing conditions, I may at any time sell the property, occupy it as my personal residence, or permit my legal dependent, parent, or grandparent to occupy it as their principal residence with no rent charged or collected, none of which will be considered to be inconsistent with the certifications made herein.**
   This certification is effective on the earlier of the dates listed below or the date the Request for Mortgage Assistance form is received by Pacific Union.

☐ By checking this box and initialing below, I am requesting a mortgage modification with respect to the rental property described in this section and I hereby certify under penalty of perjury that each of the statements above are true and correct with respect to that property.

Initials: Borrower_____          Co-Borrower _____

## DODD-FRANK CERTIFICATION

The following information is requested by the Federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203) **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving this assistance, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/We certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:
   a)   Felony larceny, theft, fraud, or forgery
   b)   Money laundering or
   c)   Tax evasion
I/We understand that the Servicer, the U.S. Department of the Treasury, or their respective agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/We also understand that knowingly submitting false information may violate Federal law. This certification is effective on the earlier of the date listed below or the date this Request for Mortgage Assistance form is received by Pacific Union.

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with Federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so.** The law provides that a lender or servicer may not discriminate either on the basis of this information or on whether you chose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person. **If you do not wish to furnish the information, please check the box below.**

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity:<br>☐ Hispanic or Latino<br>☐ Not Hispanic or Latino<br>Race:<br>☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White<br>Sex: ☐ Female   ☐ Male | Ethnicity:<br>☐ Hispanic or Latino<br>☐ Not Hispanic or Latino<br>Race:<br>☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White<br>Sex: ☐ Female   ☐ Male |

## HOMEOWNERS HOTLINE

*If you have questions about this document or the general modification process, please call Pacific Union. If you have questions about government programs that Pacific Union cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 888-995-HOPE (4673). The Hotline can help answer questions about the program and offers free HUD-certified counseling services in English and Spanish.*

| To be Completed by Interviewer | | |
|---|---|---|
| This request was taken by:<br><br>☐ Face-to-face interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | *Interviewer's Name (print or type) & ID Number*<br><br>*Interviewer's Signature*<br><br>*Date*<br>*Interviewer's Phone Number (include area code)* | *Name / Address of Interviewer's Employer* |

F2F RMA 0615

## ACKNOWLEDGEMENT AND AGREEMENT

*In making this request for consideration, I certify under penalty of perjury:*

1. I understand Pacific Union Financial, LLC may pull a current credit report on all borrowers obligated on the Note.
2. I am willing to commit to credit counseling if it is determined that my financial hardship is related to excessive debt.
3. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, or am currently entitle to the protections of any automatic stay in bankruptcy, I acknowledge that Pacific Union Financial, LLC is providing the information about the mortgage relief program at my request and for informational purposes, and not as an attempt to impose personal liability for the debt evidence by the Note.
4. I understand that if Pacific Union Financial, LLC offers me a Trial Period Plan and I fail to accept or complete the trial plan for any reason, including, for example, declining the trial plan offer, failing to accept the trial plan offer, failing to make trial plan payments in a timely manner or failing to accept a final modification at the end of the trial period, I may permanently lose eligibility for a modification under the Making Home Affordable Program and any other modification program offered by the Servicer.
5. If I am eligible for a Trial Period Plan, Repayment Plan, or Forbearance Plan, and I accept and agree to all terms of such plan, I also agree that the terms of this Acknowledgment and Agreement are incorporated into such plan by reference as if set forth in such plan in full. My first timely payment following Pacific Union's determination and notification of my eligibility or prequalification for a Trial Period Plan, Repayment Plan, or Forbearance Plan (when applicable) will serve as acceptance of the terms and conditions set forth in the notice sent to me.
6. I agree that when Pacific Union Financial, LLC accepts and posts a payment during the term of any Repayment Plan, Trial Period Plan or Forbearance Plan, it will be without prejudice to, and will not be deemed a waiver of, the acceleration of my loan or foreclosure action and related activities and shall not constitute a cure of my default under my loan unless such payments are sufficient to completely cure my entire default under my loan.
7. I agree that any prior waiver as to my payment of escrow items to Pacific Union Financial, LLC in connection with my loan has been revoked.
8. If I qualify for and enter into a Repayment Plan, Forbearance Plan, or Trial Period Plan, I agree to the establishment of an escrow account and the payment of escrow items if an escrow account never existed on my loan.
9. I consent to being contacted concerning this request for mortgage assistance at any email address or cellular or mobile telephone number I have provided to Lender or Servicer. This includes text messages and telephone calls to my cellular or mobile telephone.
10. That all of the information in this document is truthful and the hardship(s) identified is/are the reason that I need to request a modification of the terms of my mortgage loan, a short sale, or a deed-in-lieu of foreclosure.
11. I understand that Pacific Union Financial, LLC, the U.S. Department of the Treasury, owner or guarantor of my mortgage or their agents may investigate the accuracy of my statements and may require me to provide additional supporting documentation. I also understand that knowingly submitting false information may violate Federal and other applicable laws.
12. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or if it is determined that any of my statements or any information contained in the documentation that I provide are materially false and that I was ineligible for assistance under the Make Home Affordable Program (MHA), Pacific Union Financial, LLC, the U.S. Department of the Treasury, or their respective agents may terminate my participation in MHA, including any right to future benefits and incentives that otherwise would have been available under the program, and also may seek other remedies available at law and in equity, such as recouping any benefits or incentives previously received.
13. The property that I am requesting mortgage assistance for is able to be lived in, and it has not been or is not at risk of being condemned. There has been no change in the ownership of the property since I signed the documents for the mortgage that I want to modify.
14. I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner. I understand that time is of the essence.
15. I understand that Pacific Union Financial, LLC will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but Pacific Union Financial, LLC is not obligated to offer me assistance based solely on the statements in this document or other documentation submitted in connection with this request.
16. I understand that Pacific Union Financial, LLC will collect and record personal information including, but not limited to, my name, address, telephone number, Social Security number, credit score, income, payment history, government monitoring information and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any mortgage relief or foreclosure alternative that I receive by Pacific Union Financial, LLC to (a) the U.S. Department of the Treasury; (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan; (c) any investor, insurer, guarantor or Servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services in conjunction with any other mortgage relief program; and (e) any HUD-certified housing counselor.
17. I understand that I have the right to a copy of any property valuation used in connection with the decision on the request for a modification.
18. If I or someone on my behalf has submitted a Fair Debt Collection Practices Act Cease and Desist notice to my Servicer, I hereby withdraw such notice and understand that the Servicer must contact me through the loan modification process or to find other alternatives to foreclosure.

*The undersigned certifies under penalty of perjury that all statements in this document are true and correct.*

| Borrower Signature | Social Security Number | Date |
| --- | --- | --- |
| Co-Borrower Signature | Social Security Number | Date |

F2F RMA 0615

# EXHIBIT 6

**APPENDIX C**
**CERTIFICATE OF COMPLIANCE WITH MEDIATION REQUIREMENT**
**PURSUANT TO R.I. GEN. LAWS § 34-27-3.2**

I, William Martinelli, of Rhode Island Housing, certify as follows:

1. PACIFIC UNION FINANCIAL, LLC is the holder of the mortgage given by Sochanna Chum and MANNY CHUM, located at 115 2Nd Avenue, Providence, RI 02910 (the "Mortgage").

2. Sochanna Chum and MANNY CHUM was properly served with the Notice of Mediation Conference pursuant to R.I. Gen. Laws § 34-27-3.2.

3. Rhode Island Housing served as the Mediation Coordinator defined in R.I. Gen. Laws § 34-27-3.2 and Department of Business Regulation Banking Regulation 5 regarding the Mortgagee's potential foreclosure proceedings.

4. PACIFIC UNION FINANCIAL, LLC has paid all fees and penalties required under R.I. Gen. Laws § 34-27-3.2 subsections (d)(1) and (f).

5. For the reasons set forth below, the Mortgagee is authorized to proceed with the foreclosure action, including recording of the foreclosure deed [check one box below]:

   ☑ After two attempts by the Agency to contact the Mortgagor, the Mortgagor failed to respond to the request of the Agency to appear for the Mediation Conference or otherwise participate in the Mediation Conference.
   ☐ The Mortgagor failed to comply with the requirements of R.I. Gen. Laws § 34-27-3.2.
   ☐ The parties been unable to reach an agreement to renegotiate the loan in order to avoid a foreclosure through the Mediation Conference, despite the Mortgagee's good faith efforts as noted on Attachment 1.

6. I am authorized by the Agency to issue this Certificate.

William Martinelli
Mediation Coordinator
November 20, 2017

ATTACHMENT 1

Good Faith Determination

The Mortgagee, or its authorized representative, has made a good faith effort to reach agreement with the Mortgagor to renegotiate the terms of the Mortgage in an effort to avoid foreclosure.    The Mortgagee's good faith is evidenced by the following factors [check all applicable boxes]:

☑ Mortgagee provided the Notice of Mediation Conference to the Mortgagor as required by R.I. Gen. Laws § 34-27-3.2.

☐ Mortgagee designated an agent authorized to participate in the Mediation Conference on its behalf, and with authority to agree to a Workout Agreement on behalf of Mortgagee.

☐ Mortgagee made reasonable efforts to respond in a timely manner to requests for information from the Mediation Coordinator, Mortgagor, or counselor assisting the Mortgagor.

☐ Mortgagee analyzed and responded to the Workout Agreement submitted by the Mortgagor and/or Mediation Coordinator within fourteen days of the Workout Agreement.

☐ If the Mortgagee declines to accept the Mortgagor's Workout Agreement, the Mortgagee provided written, detailed statement of its reasons for rejecting the proposal within fourteen (14) days.

☐ If the Mortgagee declines to accept the Mortgagor's Workout Agreement, the Mortgagee offered, in writing within fourteen (14) days, to enter into an alternative work-out/disposition resolution proposal that would result in a material net financial benefit to the Mortgagor as compared to the terms of the Mortgage.

☐ Other facts demonstrating Mortgagee's good-faith [please specify]:

_____

_____

_____

_____

_____

# EXHIBIT 7



**PacificUnionFinancial** LLC
YOUR INTERESTS ARE COVERED

08/23/2018

**SOCHANNA CHUM**
**MANNY CHUM**
115 2ND AVE
CRANSTON, RI 02910

Loan Number:          ███████
Property Address:     115  SECOND AVE
                      CRANSTON, RI 02910

🖀  **FORM 34-27-3.1**

| NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES |
|---|

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of The Rhode Island Mortgage Foreclosure and Sale Act.

### NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

Re: ███████

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If you fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

### NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost.** Counseling services that can help you understand your options and provide resources and referrals that may assist you in preventing foreclosure are available from mortgage counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1-800-877-8339. Foreclosure prevention counseling services are available free of charge through HUD's Housing Counseling Program.

> **HUD Approved Housing Counseling Agencies in Rhode Island may be found at this link http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. If you do not have internet access, call the toll-free number above and request a printed list.**

| Mortgagee: | PACIFIC UNION FINANCIAL, LLC |
|---|---|
| Mortgagee Address: | |
| Street: | 1603 LBJ Freeway Suite 500 |
| City, State, Zip Code: | Farmers Branch, TX 75234 |
| Mortgagee Authorized Representative: | Our Home Retention Department |
| Date mailed: | 08/23/2018 |

Contact Information for Mortgagee Authorized Representative:

| Telephone: | 1-866-654-8327 |
|---|---|
| Email: | lossmitigation@loanpacific.com |

**FORMULARIO 34-27-3.1**

| AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA |
|---|

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island §34-27-3.1 de *The Rhode Island Mortgage Foreclosure and Sale Act* (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

**AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA**

Asunto ██████████

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca está morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

**NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA**

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el *United States Department of Housing and Urban Development* (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov. El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800-877-8339. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

**Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchsta te=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.**

Acreedor hipotecario:                               PACIFIC UNION FINANCIAL, LLC

Dirección del Acreedor hipotecario:

Calle:                                              1603 LBJ Freeway Suite 500

Ciudad, estado y código postal:                     Farmers Branch, TX 75234

Representante autorizado del Acreedor hipotecario: Our Home Retention Department

Fecha de envío postal:                              08/23/2018

Información de contacto del representante autorizado del Acreedor hipotecario:

Teléfono:                                           1-866-654-8327

Correo electrónico:                                 lossmitigation@loanpacific.com



**PacificUnionFinancial** LLC
YOUR INTERESTS ARE COVERED

08/23/2018

**SOCHANNA CHUM**
**MANNY CHUM**
115 2ND AVE
CRANSTON, RI 02910

Loan Number:            ██████████
Property Address:       115 SECOND AVE
                        CRANSTON, RI 02910

 **FORM 34-27-3.1**

---

**NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND
NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES**

---

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of
The Rhode Island Mortgage Foreclosure and Sale Act.

### NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

Re: ██████████

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If
you fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage
loan referenced in this Notice.

### NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost.** Counseling services that can help you
understand your options and provide resources and referrals that may assist you in preventing foreclosure are
available from mortgage counseling agencies approved by the United States Department of Housing and
Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's
toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The
TDD number is 1-800-877-8339. Foreclosure prevention counseling services are available free of charge
through HUD's Housing Counseling Program.

> **HUD Approved Housing Counseling Agencies in Rhode Island may be found at this link
> http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI.
> If you do not have internet access, call the toll-free number above and request a printed
> list.**

| | |
|---|---|
| Mortgagee: | PACIFIC UNION FINANCIAL, LLC |
| Mortgagee Address: | |
| Street: | 1603 LBJ Freeway Suite 500 |
| City, State, Zip Code: | Farmers Branch, TX 75234 |
| Mortgagee Authorized Representative: | Our Home Retention Department |
| Date mailed: | 08/23/2018 |

Contact Information for Mortgagee Authorized Representative:

| | |
|---|---|
| Telephone: | 1-866-654-8327 |
| Email: | lossmitigation@loanpacific.com |

☎ **FORMULARIO 34-27-3.1**

---

**AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA**

---

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island §34-27-3.1 de *The Rhode Island Mortgage Foreclosure and Sale Act* (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

**AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA**

Asunto: █████████

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca esta morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

**NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA**

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el *United States Department of Housing and Urban Development* (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov. El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800-877-8339. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

> **Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchsta te=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.**

---

Acreedor hipotecario:                               PACIFIC UNION FINANCIAL, LLC

Dirección del Acreedor hipotecario:

Calle:                                              1603 LBJ Freeway Suite 500

Ciudad, estado y código postal:                     Farmers Branch, TX 75234

Representante autorizado del Acreedor hipotecario: Our Home Retention Department

Fecha de envío postal:                              08/23/2018

Información de contacto del representante autorizado del Acreedor hipotecario:

Teléfono:                                           1-866-654-8327

Correo electrónico:                                 lossmitigation@loanpacific.com